## STEPHENS–BROWN, Inc. v. UNITED STATES.

### No. 4981.

United States District Court
W. D. Missouri, W. D.

Jan. 14, 1949.

Charles V. Garnett, of Kansas City, Mo. (Edgar Shook; of Kansas City, Mo., of counsel), for plaintiff.

Edw. H. Hickey, Sp. Asst. to Atty. Gen., Vincent P. Russo, Atty Dept. of Justice, of Washington, D. C., and Sam M. Wear, U. S. Atty., and Thomas A. Costolow, Asst. U. S. Atty., both of Kansas City, Mo., for defendant.

REEVES, Chief Judge.

In the above motion counsel for both parties have submitted able and lucid briefs, rich in the citation of authorities, in support of their respective contentions.

The plaintiff seeks relief under an Act of Congress known as the Lucas Act or the Hardship Claims Act approved August 7, 1946, 41 U.S.C.A. § 106 note. The object of this act was to supplement Section 611, Title 50 U.S.C.A.Appendix. The latter act had for its purpose the amelioration of hardships experienced by contractors with governmental agencies during the prosecution of the war. It was provided by such act that the President was empowered to authorize "any department or agency of the Government exercising functions in connection with the prosecution of the war effort, * * * to enter into contracts and into amendments or modifications of contracts heretofore or hereafter made and to make advance, progress and other payments thereon, without regard to the provisions of law relating to the making, performance, amendment, or modification of contracts *whenever he deems such action*

*would facilitate the prosecution of the war;* * * *."* (Italics mine.)

 Pursuant to this power vested in the President by Act of Congress the President issued Executive Order No. 9001, 50 U.S.C.A.Appendix, § 611 note, effective as of December 27, 1941. Pertinent portions of the Executive Order may be found in paragraph 3 of said Order, as follows: "3. The War Department, the Navy Department, and the United States Maritime Commission may by agreement modify or amend or settle claims under contracts heretofore or hereafter made, may make advance, progress, and other payments upon such contracts of any percentum of the contract price, and may enter into agreements with contractors and/or obligors, modifying or releasing accrued obligations of any sort, including accrued liquidated damages or liability under surety or other bonds, whenever, in the judgment of the War Department, the Navy Department, or the United States Maritime Commission respectively the prosecution of the war is thereby facilitated. Amendments and modifications of contracts may be with or without consideration and may be utilized to accomplish the same things as any original contract could have accomplished hereunder, irrespective of the time or circumstances of the making of or the form of the contract amended or modified, or of the amending or modifying contract, and irrespective of rights which may have accrued under the contract, or the amendments or modifications thereof."

It may be inferred from the statute and the executive order that it was the purpose of the government, in the interest of facilitating the war effort, to relieve contractors from burdensome undertakings where such burdens might prove too heavy to bear and thereby interfere with the war effort. It was a liberalizing statute on the part of the government and the executive order supplemented and clarified the statute and the purpose of the Congress.

This liberal law continued as an effective means for lifting a load from burdened contractors until the surrender of Japan on August 14, 1945. Apparently it was believed by at least one of the war agencies

that such agencies were not authorized to grant relief in the way outlined by the statute and the executive order to contractors who found themselves overburdened with their undertaking on behalf of the government in its war effort after the cessation of hostilities. It may be supposed that many contractors suffered heavy losses without fault or negligence on their part and their demands upon the government for relief after August 14, 1945, became and were so pressing and importunate that there was introduced into the Congress the enactment approved August 7, 1946, which by its terms supplemented the amelioration act above mentioned. This enactment apparently differed somewhat from the original bill introduced for the purpose of affording the relief mentioned. As the bill was discussed and debated in the Congress many of its earlier restrictions and limitations were removed and when finally passed it broadly extended relief to contractors engaged in producing material for the war effort in all cases where their losses had been sustained "without fault or negligence on their part in the performance of such contracts or subcontracts." The agencies mentioned were authorized to make settlement of such claims. The claims covered by the enactment were for losses incurred between September 16, 1940 and August 14, 1945. A standard for "arriving at a fair and equitable settlement of claims under this Act" was outlined by Section 2(a) of the Act. It was provided by Section 3, however, that, "Claims for losses shall not be considered unless filed with the department or agency concerned within six months after the date of approval of this Act, *and shall be limited to losses with respect to which a written request for relief was filed with such department or agency on or before August 14, 1945, * * *."* (Italics mine.)

Plaintiff alleges that such a request for relief was made in this action and in like manner in the claim submitted within the six months following the approval of the act. It is asserted by the defendant in its motion that no such claim was made "with respect to which a written request for relief was filed with such department or agency on or before August 14, 1945."

An inspection of Exhibit "A" attached to the defendant's motion to dismiss and for summary judgment in its behalf shows that on May 8, 1944 this plaintiff submitted a claim for "materials and services furnished and labor performed by us upon request of the Area Engineer under our contract which we believe are beyond the requirements and intent of the plans, specifications and contract for the construction of Additional Facilities 'B', Oklahoma Aircraft Assembly Plant, Oklahoma City, Oklahoma." The details of such materials and services were then set out with the items of cost which total $19,605.14.

Adverting to the complaint the net amount sued for is $67,839.36. It is asserted by the defendant that the losses alleged and claimed in plaintiff's complaint are different from the claim submitted by the plaintiff on July 8, 1944, and therefore that there was a failure to comply with said Section 3 of the Lucas or Hardship Claims Act, which compliance was a condition precedent to confer jurisdiction upon the court. Counsel for the plaintiff, on the other hand, contend that the mere fact that a claim was made within the statutory period was sufficient to open the door to the enlarged claim submitted after the enactment of the law and which forms the basis of this action.

1. For the purpose of this decision it is unnecessary to discuss the question as to whether the act is as restrictive and limited as contended by defendant or as liberal as asserted by counsel for plaintiff. It is sufficient to say that the claim submitted by plaintiff dated July 8, 1944 unquestionably covered a part of the loss which it asserts in its subsequent claim.

Since the trial judges have been admonished by the Court of Appeals, 8th Circuit, that causes should not be dismissed because of inadequate averments or ambiguities as to the rights of recovery, the plaintiff in this case should at least be given an opportunity to assert as much of its claim as if submitted to the defendant within the statutory period. It is not the purpose of this statement to indicate that the plaintiff should not have the right broadly to assert and have established in this action the full amount alleged in its complaint and demanded in its prayer for relief.

2. The contention of the defendant that the claim of May 8, 1944 was denied and, therefore, under Executive Order, Oct. 5, 1946, No. 9786 the plaintiff is debarred the right of recovery is untenable. Apparently the executive order was prepared in the light of the bill as originally introduced. Paragraph 204 of said Order specifically denies relief where final action with respect to a claim was taken before August 14, 1945. The executive order in that regard contravenes the express provisions of the statute which specifically provides, "but a previous settlement under the First War Powers Act, 1941, or the Contract Settlement Act of 1944 shall not operate to preclude further relief otherwise allowable under this Act."

3. The averments of the complaint and the exhibits attached to the motion to dismiss and for judgment on the pleadings are sufficient to indicate at this stage of the proceeding that the court has jurisdiction and that the plaintiff should have an opportunity to present its proofs.

Accordingly, the motion to dismiss and for a summary judgment on behalf of the defendant will be overruled.